UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF PENNSYLVANIA


UNITED STATES OF AMERICA          )
                                  )    10-CR-00789
                                  )
     vs.                          )
                                  )
ANTONIO ORTIZ,                    )    Philadelphia, PA
                                  )    June 13, 2011
          Defendant.             )



                    TRANSCRIPT OF SENTENCING
              BEFORE THE HONORABLE R. BARCLAY SURRICK
                  UNITED STATES DISTRICT JUDGE


APPEARANCES:

For the Government:        ARLENE D. FISK, ESQUIRE
                           U.S. ATTORNEY'S OFFICE
                           615 Chestnut Street, STE 1250
                           Philadelphia, Pennsylvania 19106


For the Defendant:         SUSAN M. LIN, ESQUIRE
                           FEDERAL COMMUNITY DEFENDERS
                           Curtis Center, STE 540 West
                           601 Walnut Street
                           Philadelphia, Pennsylvania 19106


Interpreter:               LOIS WEAVER

Audio Operator:            MICHAEL FINNEY

Transcribed by:            DIANA DOMAN TRANSCRIBING
                           P.O. Box 129
                           Gibbsboro, New Jersey  08026-0129
                           Office:  (856)  435-7172
                           Fax:     (856)  435-7124
                           Email:   dianadoman@comcast.net



Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

1                           I N D E X

2    5(k)(1.1) Motion

3        Ms. Fisk                        4

4        THE COURT:  Ruling              8

5    Sentencing Argument By:

6        Ms. Lin                         8

7        Ms. Fisk                       14

8    Allocution

9        Mr. Ortiz                      17

10   Sentence

11       THE COURT:                     18

12

3

1           (The following was heard in open court at 10:00 a.m.)

2               THE COURT:  Okay.  We have the case of United States

3       v. Antonio Ortiz.  It's number 10-789.  Counsel, please

4       identify yourselves for the record.

5               MS. FISK:  Arlene Fisk on behalf of the Government.

6       Good morning, Your Honor.

7               MS. LIN:  Good morning, Your Honor.  Susan Lin on

8       behalf of Mr. Ortiz.  Also at counsel table with me is Jill

9       Steinberg, she is a paralegal litigation specialist from my

10      office.

11              THE COURT:  All right.  We have an interpreter here

12      this morning.  Mr. Finney, will you swear the interpreter?

13              THE CLERK:  Ms. Weaver, will you please raise your

14      right hand.

15                      LOIS WEAVER, INTERPRETER, SWORN

16              THE COURT:  All right.  Counsel, you have received a

17      copy of the presentence report.  Are there any objections to

18      the report, at this juncture?

19              MS. FISK:  No, sir.

20              MS. LIN:  No, Your Honor.

21              THE COURT:  All right.  I have reviewed the

22      presentence, I'm going to adopt the factual matter contained

23      in it.  The presentence calculates the sentencing guidelines

24      to be 262 to 327 months.

25              I've also received sentencing memoranda from the

Fisk - Motion                                                   4

1   Government and from defense counsel.  I have read those

2   memoranda.  They are made a part of the record.

3           Now, Ms. Fisk, I understand you have a motion to

4   make?

5           MS. FISK:  Yes, Your Honor.  The Government has

6   filed a motion under United States Sentencing Guideline

7   5(k)(1.1), as well as under Title 18, United States Code

8   Section 3553, regarding a request for a departure both from

9   the sentencing guidelines, as well as the applicable mandatory

10  minimum.

11          This motion for a departure is based upon the

12  defendant's substantial cooperation in the prosecution and

13  investigation of other individuals.

14          Regarding the specific factors that this Court needs

15  to consider under Torres regarding the nature of the

16  defendant's assistance.  The defendant testified before a

17  grand jury, leading to the issuance of a superceding

18  indictment in this information, permitting the Government to

19  indict Francisco Garcia, with whom he conspired to accept

20  delivery of the half kilogram of cocaine in August of 2010.

21          He also testified before the grand jury and provided

22  law enforcement with information about a kilogram of cocaine

23  that he accepted on behalf of Angel Maldonado.  Angel

24  Maldonado, at that point, had already pled guilty before this

25  Court on another kilogram of cocaine that he had accepted at

Fisk - Motion                                          5

1    his own home through the mails the day after, but had denied

2    that he had accepted any other kilograms of cocaine, until the

3    defendant provided us with information about a kilogram that

4    he had provided for Angel Maldonado.

5           As a result of the defendant's statements to us, we

6    were able to confront Angel Maldonado with that information

7    and obtain from him admissions to additional kilograms of

8    cocaine, all of which will be relevant at his sentencing

9    before this Court, which has now been continued, because of my

10   vacation, until sometime in August.

11          So that is the nature of the cooperation.  The

12   defendant has also, Your Honor, proffered with regard to a

13   great deal of other matters about which he has knowledge, both

14   drug trafficking and tax fraud matters.

15          None of that information has yet resulted in any

16   other prosecution or arrest, although it appears to be

17   reliable, and it has been given to the various law enforcement

18   agencies with an interest in that information, and continues

19   to be investigated.

20          Though it was certainly not a basis for delaying the

21   sentencing, I certainly wanted to advise the Court of its

22   existence.

23          With regard to the significance of the cooperation,

24   it is really self-evident from the Government's

25   representation, that is that we are more aware of the bad acts

1    committed by Angel Maldonado, an unindicted co-conspirator in

2    this matter, and we were also able to successfully prosecute

3    Francisco Garcia who, following his arrest, as this Court is

4    aware, pled guilty to the charges as well.

5           The reliability of the information, specifically

6    with regard to those individuals I've mentioned, has been

7    corroborated by other independent admissions, as well as

8    police and law enforcement investigations.

9           The danger to the defendant exists from the general

10   status of a cooperator in a prison setting.  We are not aware

11   of any specific threats against the defendant.

12          I do know that the defendant is of the belief, and

13   there's no reason, again, to dispute that, that one of the

14   persons who was providing narcotics to Angel Maldonado is

15   indeed a violent person, who would have the ability to harm

16   someone that he chose to harm.

17          So that potential also exists.  But, again, we have

18   no specific information.  Regarding the timeliness of the

19   defendant's cooperation, it could not have been more

20   immediate.  The defendant was arrested by state bureau of

21   narcotics investigation officers in August of last summer, and

22   was held in local custody.

23          When Federal investigators who were involved in the

24   investigation of Mr. Maldonado became aware of the defendant's

25   incarceration, knowing him to have been a suspect in the prior

1   involvement with Maldonado, they interviewed the defendant,

2   who was in custody on another matter, about his dealings with

3   Maldonado.

4          The defendant gave a statement of admission to those

5   investigators from the prison setting.  The investigators

6   returned, warned him again, interviewed him again, and he made

7   further, more detailed admissions regarding his contact with

8   Maldonado.

9          At that point, the defendant was brought over to the

10  Federal system on a complaint and warrant regarding --

11  regarding the Maldonado contacts.  And the defendant then gave

12  a full admission, not only about his Maldonado contacts, but

13  also about the August 2010 contacts.

14         The defendant signed a plea agreement and agreed to

15  plead guilty to an information, even without requiring the

16  Government to go to grand jury.  And it was only after he

17  signed that plea agreement and pled guilty to the information

18  that he then appeared in front of the grand jury, permitting

19  the Government to obtain the superceding indictment.

20         Based on all of those factors, Your Honor, the

21  Government has filed this motion and would ask the Court to

22  consider the departure.

23         THE COURT:  Counsel, do you have anything you want

24  to add at this juncture?

25         MS. LIN:  Not at this juncture, Your Honor.  Thank

1   you.

2              THE COURT:  All right.  It's clear that the

3   defendant should be granted the downward departure motion

4   under 5(k)(1.1), 3553(e).  He did come forward in a timely

5   fashion.  He gave reliable, significant information.  In

6   situations like this, there is always some danger.  So I am

7   satisfied that the granting of the motion is perfectly

8   appropriate, and I will downwardly depart from the sentencing

9   guidelines and from the mandatory minimum.  All right?

10             MS. FISK:  Yes, sir.

11             THE COURT:  Counsel, I'll now hear whatever you have

12   to say.

13             MS. LIN:  Thank you, Your Honor.  Your Honor, the

14   defense in this case is asking the Court to sentence Mr. Ortiz

15   in, basically in the non-career offender guideline range.

16             Were it not for the career offender guideline range,

17   or guideline section, Mr. Ortiz' guideline range would be 84

18   to 105 months.

19             That's based on an offense level calculated

20   according to the behavior in this offense, which is 26,

21   subtract the three for acceptance of responsibility, and his

22   criminal history category would be five, based on his prior

23   contacts with the criminal justice system.

24             We're actually asking the Court to consider the

25   bottom end of that guideline range, 84 months, as an

1    appropriate sentence in this case.   I believe that that range

2    does reflect both the seriousness of this offense and Mr.

3    Ortiz's prior criminal history.

4            The cooperation that Mr. Ortiz has provided to the

5    Government certainly also merits the Court's consideration of

6    the non-career offender guideline range.   Additionally, the

7    Sentencing Commission itself has recognized, in its 15 year

8    report, which I did cite in the sentencing memorandum, that

9    the career offender guideline range often does not meet, or

10   does not work towards the goal of a sentencing that's actually

11   set forth in Section 3553.

12           The studies have shown, or the Commission itself has

13   found that oftentimes the career offender guidelines

14   disproportionately impact people of color, which leads to less

15   faith in the criminal justice system, which counteracts the

16   purpose of just punishment that's supposed to be one of the

17   goals of 3553.

18           Additionally, the Commission itself has found that

19   oftentimes, especially in the case of drug offenders, the

20   career offender guideline range does not work towards the goal

21   of general deterrence.   That in reality the certainty of

22   punishment is much -- has much greater deterrent effect than

23   the length of the punishment.

24           I also refer to that, and flesh that out in more

25   detail on page 11 of my sentencing memorandum.

1          Finally, the Sentencing Commission has found that as

2   far as individual deterrence is concerned and recidivism rates

3   are concerned, that there is the same level of recidivism for

4   those who are sentenced under the regular non-career offender

5   guidelines, as those who are sentenced under the career

6   offender guideline range.

7          For all those reasons, Your Honor, I'd ask that you

8   consider that this particular case, the starting point for the

9   Court really should be the non-career offender guidelines,

10   rather than the career offender guideline range.

11          And, finally, Your Honor, I believe that the most

12   important reason the Court should consider an 84-month

13   sentence, is Mr. Ortiz's personal history and characteristics.

14          In Puerto Rico, when he was a child, he was

15   diagnosed as being mildly mentally retarded.  We have attached

16   school records indicting that they placed him in special

17   education classes because he is categorized as mentally

18   retarded.

19          The PSR does refer to a psychiatric report that was

20   completed when Mr. Ortiz was approximately 15 years old.  It

21   found that his IQ level was 70.  According to the DSM-IV, that

22   is within the range of one who is mildly mentally retarded.

23          Additionally, there is attached to the sentencing

24   memorandum a diagnosis from a neurologist in Puerto Rico who

25   found that Mr. Ortiz was both dyslexic, that he needed a lot

1    of help in his education and his academic work, and that there

2    were slight abnormalities in his EEG.

3            Your Honor, the bottom line is that this all works

4    together to, in Mr. Ortiz, to create a kid who is pretty

5    suggestible to others.

6            The nature of mild mental retardation is not that

7    it's completely obvious at first meeting that somebody is

8    mildly MR.  It's more like somebody who can only reach the

9    sixth level, the sixth grade level of education.

10           According to the DSM-IV most people who have this

11   diagnosis can't get beyond that range.  Also according to

12   DSM-IV, and as recognized by the Supreme Court in Atkins, many

13   people who suffer from mental retardation are easily led by

14   others.

15           They generally tend to follow the people around

16   them.  They don't think about the consequences of their

17   action.  They are slow in information processing.

18           In the case of Mr. Ortiz, I believe that much of his

19   criminal conduct was due to him, frankly, surrendering himself

20   -- surrounding himself with the wrong people.  Even in this

21   case, he accepted a package at the suggestion of Maldonado.

22           He and Garcia were involved in a sting together,

23   because a third party had asked Ortiz if he could obtain

24   cocaine for another interested buyer.

25           When he was in Puerto Rico in the care of his

1    mother, this stuff wasn't happening.  It was only when he came

2    to Philadelphia and was no longer around people who were

3    actually watching out for him and caring for him.

4         His flat affect and reticence, which was noted

5    during the presentence investigation report interview, which

6    is fairly obvious when anyone talks to him, I believe is due

7    to his diagnosis of MR, and because he does suffer from some

8    depression and anxiety.

9         Your Honor, none of this means that he shouldn't be

10   punished for what he did.  He absolutely took these actions,

11   he did break the law.  He was competent, he understood that he

12   was breaking the law when he did them.

13        I would just ask the Court to consider that this

14   makes him slightly less personally culpable then other people

15   who commit the same actions, who do not suffer from this

16   condition.

17        Once again, Atkins, the case did recognize that it

18   is -- that many times people who are mentally retarded do have

19   a slightly lesser degree of personal culpability.

20        Finally, Your Honor, our office did speak with Julia

21   Brito, who is the mother of Antonio Ortiz.  She is in Puerto

22   Rico right now.  She has written Mr. Ortiz often begging him

23   to come home since he's been incarcerated.  She has expressed

24   to our office that, as he was growing up, that she had him

25   looked at by psychiatrists and social workers, that she tried

1   to do the best she could for him.

2            That what she was told by the psychiatrist was that,

3   he is going to be somebody who models himself after the people

4   who are around him.  And that what he really needs is a lot of

5   guidance.

6            I recognize that this presents an interesting

7   dilemma for the Court, because we don't want him out on the

8   street and all of a sudden following the wrong people again.

9   But in this case, his mother is willing to take him home to

10  Puerto Rico.

11           He has done fine in her care.  He has indicated that

12  he doesn't want to have any contact with anyone from his old

13  life again.  He indeed is no longer in contact with his

14  girlfriend, who was not helping him at all in his prior life

15  and the people he was hanging out with.

16           And he has acknowledged that he needs to go home.

17  That she was the only one who ever actually looked out for

18  him.  That because of the people who he hung out with, who all

19  were saying, oh, we're going to help you out, we're going to

20  watch out for you, and he would do what they asked, that it

21  has just landed him in prison over and over again.

22           Your Honor, a sentence of 84 months is more than

23  he's ever served in the past.  A sentence of 84 months is

24  plenty of time for the Bureau of Prison to set up the programs

25  that are necessary to help him acknowledge what he needs to do

Fisk - Argument                                    14

1    when he gets out.

2              He has had a habit of smoking a lot of marijuana.

3    An 84-month sentence in prison would allow him to address that

4    issue as well, through the drug programs provided by the

5    Bureau of Prisons.

6              Court's indulgence, please.

7         (Pause)

8              MS. LIN:  And with that, I would incorporate

9    anything else in the written submission that I might have

10   neglected in my oral presentation.  Thank you, Your Honor.

11             THE COURT:  All right.  Thank you, Ms. Lin.  Ms.

12   Fisk?

13             MS. FISK:  Your Honor, the Government does not agree

14   that the guidelines as a result of the motion should simply

15   eliminate the career offender calculation.  I mean, that is

16   not I believe what the sentencing guidelines anticipate.

17             The sentencing guidelines and the Supreme Court

18   directs the Court to do a calculation under the guidelines

19   first, and then utilize that as part of the consideration in

20   determining an appropriate sentence.

21             And it would be the Government's position that it is

22   from the guidelines calculation that this Court should then

23   depart downward, in a manner that the defendant deserves.

24             What is disturbing about the defense counsel's

25   representation to the Court, and the suggestion that the

1   defendant was surrounded by the wrong people and that's why he

2   did the wrong things, is the fact that when both of these

3   criminal events occurred, the defendant was on parole.  Had

4   access to Pennsylvania State parole agents.

5           In fact this parole expired, his formal parole

6   expired a day or two before he accept -- he committed the

7   August 2010 offense, and that matter he was then on probation.

8           He was fully on parole from a state conviction for

9   aggravated assault, not drug trafficking, when he committed

10  the April -- I'm sorry, the March 31st transaction, where he

11  accepted the half kilo of cocaine.

12          So the defendant did have access to law-abiding

13  individuals.  Individuals who were attempting to point him in

14  the right direction.  Individuals who were presumably

15  following up with him regarding education, regarding

16  vocational skills.

17          Even his drug treatment, one can only assume, was at

18  least addressed during the extensive state incarceration

19  period that he attended after his conviction -- his third

20  conviction for aggravated assault.  Because in fact, though he

21  is a career offender, he is a career offender by virtue of

22  three, not merely two prior convictions.  Two of them being

23  drug trafficking convictions and the third being the

24  aggravated assault conviction, which followed fairly shortly

25  on the heels of his second arrest, which also resulted in a

1   conviction.

2          So though one would hope that the defendant would

3   surround himself with people who will point him in the right

4   direction, history at least tells us that in the past when he

5   has had access to those people, he has not utilized that

6   opportunity and chose to turn one direction, rather than

7   another.

8          It is certainly that action and that choice on the

9   defendant's behalf which still calls for a substantial

10  sentence, tempered by a reduction.  Because but for

11  cooperation of the defendant two additional drug traffickers

12  would not be facing the same level of sentencing that they are

13  now facing.

14         And we certainly do rely on individuals, like this

15  defendant, to share information to allow us to go further and

16  to bring in additional offenders.  And he absolutely deserves

17  consideration for that.

18         For those reasons, then, the Government does ask

19  that the departure start from the otherwise advisory

20  sentencing guidelines and go down from there, taking into

21  consideration the background of the defendant, the nature of

22  his convictions, and the choices that he has made.

23         It is -- the defendant -- and, again, the defense

24  counsel's representation is that his mother will assure that

25  this doesn't happen again.

1          It appears from the PSR that the defendant is the

2    one who chose to leave school when he was in fact before the

3    age of majority, at age of 17, in order to come to the United

4    States.

5          It doesn't appear that he was stopped.  It doesn't

6    appear that his mother either prevented him from, or joined

7    him in that decision, or disagreed with that decision, but he

8    was, even before he reached the legal age of majority, was

9    making his own choices and making decisions, which

10   subsequently have caused him to end up in this courtroom.

11         I don't know that we can really place on his mother

12   the burden, the obligation, or the ability to curb the kind of

13   conduct and the actions that we have seen in a fairly

14   substantial criminal career.

15         THE COURT:  All right.  Ms. Lin, do you want to

16   bring your client forward?

17      (Pause)

18         THE COURT:  All right.  Mr. Ortiz, in a few minutes

19   I'm going to impose a sentence on you.  But before I do that,

20   I will hear anything you want to say.

21         THE DEFENDANT:  I accept responsibility and I

22   apologize to the United States for any harm I have caused.

23   And I'd like to go back to my mom.

24         And to be with my mom and my grandma and my family.

25   That's all.

1           THE COURT:  All right.  The sentence that I impose

2    on Mr. Ortiz as to punish him for the crimes that he has

3    committed has to act as a deterrent both to him and to others

4    who might decide to become engaged in this type of conduct.

5           I think perhaps most importantly in this particular

6    case it has to protect the public, and it has to provide for

7    some rehabilitation, if needed.

8           Mr. Ortiz has admitted committing very serious

9    offenses.  The crimes here, possession with intent to

10   distribute 500 grams or more of cocaine, it's a very serious

11   offense.  The drug problem in this country is destroying many,

12   many people.  And Mr. Ortiz was participating in and

13   furthering that end.

14          So I have to look at this offense -- these offenses

15   as being very serious in nature.  In looking at the defendant,

16   it is troubling that he has three prior convictions, two of

17   them for drug offenses, the same offenses that we're talking

18   about here.

19          He was sentenced to two to four years in jail, and

20   it didn't teach him anything.  He committed an aggravated

21   assault, which is very, very disturbing.  It's one thing to

22   suggest that Mr. Ortiz has been led by others into the drug

23   trade, it's quite another to look at this criminal record and

24   aggravated assault, where he evidently got into an argument

25   with somebody and shot him.

1        He wasn't led into that.  He was sentenced to three

2   to six years for that offense.  And here he stands before me

3   facing sentencing guidelines of 262 to 327 months.  So as I

4   said a few minutes ago, I think the thing that I have to be

5   most concerned about here is protection of the public.

6   Protecting them from Mr. Ortiz.

7        Now he has, in fact, come forward in a timely

8   fashion, he has given significant information to the

9   Government.  He has assisted the Government in prosecuting

10  others.  And for that he does deserve consideration, and I

11  will give him consideration.  And, frankly, I'll give him

12  serious consideration.

13       But I don't believe it's necessary to go back to the

14  pre-career offender status of Mr. Ortiz in order to do justice

15  in this situation.  He is a career offender, he earned it and

16  he has to live with the consequences of that.

17       But I will give him substantial consideration for

18  his cooperation, the assistance that he has given.  I'm also

19  going to take into consideration the information that's

20  provided in the presentence report, and that counsel again

21  advised me of this morning, and that is his background, his

22  mental health state.

23       It is apparent that there are deficiencies, and they

24  do, in some respects, explain, they don't justify, but they do

25  in some respects explain the conduct.  So I'm going to impose

1    a sentence that punishes Mr. Ortiz, that will protect the

2    public for a period of time, and that will act as a deterrent

3    to others who might decide to become engaged in this conduct.

4            And I will recommend strongly that the Bureau of

5    Prisons not only address the drug problem that he has, the

6    marijuana problem, but also provide whatever assistance they

7    can in the mental health area.

8            I'm satisfied that a sentence of 132 months is an

9    appropriate sentence.  That is a significant downward

10   departure from the sentencing guidelines, but it is an 11 year

11   sentence.  And I think that Mr. Ortiz deserves that sentence

12   under all of the circumstances.

13           I'm going to place him on supervised release for a

14   period of, I believe the period is 8 years on the Count 2.

15   And I do that, because history indicates that there may be

16   recidivism here.  And the Court should be in a position to

17   address that, if it occurs.

18           I'm not going to impose a fine.  Mr. Ortiz is going

19   to have to pay the special assessments of $200.  But under all

20   the circumstances, I believe that that is a reasonable

21   sentence.  And, counsel, I will hear anything more you want to

22   say before I formally impose that sentence.

23           MS. LIN:  Would the Court at this point be -- I

24   don't know if it's appropriate at this point, be willing to

25   allow eventual transfer of supervised release to the District

1  of Puerto Rico?

2              THE COURT:  I have no problem with that at all.  And

3  as a matter of fact, I recommend it strongly.  If Mr. Ortiz

4  goes home, perhaps his mother can be of assistance, on the one

5  hand, but on the other hand, at least the people in

6  Philadelphia will be protected.

7              MS. LIN:  And, Your Honor, one additional thing,

8  which I did not raise because the facts are so murky at this

9  point in time.

10             The prior aggravated assault conviction that Mr.

11 Ortiz had, I did pull the transcript from that jury trial.  It

12 had originally been a jury trial that resulted in a hung jury,

13 and then he ended up pleading guilty to it.

14             And he did give a confession to it.  But when the

15 complaining witness came into Court the complaining witness

16 was fairly adamant on the record that Mr. Ortiz was not the

17 one who actually shot him.

18             Now Mr. Ortiz did give a confession to that case and

19 he did plead guilty to it.  I've never been able to figure out

20 what actually happened, and, so, therefore, I don't know if

21 that's mitigating or not.  But I figure the Court should

22 probably know that there is murkiness surrounding that.

23             THE COURT:  All right.

24             MS. LIN:  For whatever it's worth.

25             THE COURT:  Ms. Fisk, do you have anything more?

1           MS. FISK:  No, sir.

2           THE COURT:  All right.  Pursuant to the Sentencing

3    Reform Act of 1984, it's the judgment of the Court that you,

4    Antonio Ortiz, be committed to the custody of the Bureau of

5    Prisons for a period of 132 months on Counts 1 and 2 of the

6    indictment.  Those sentences to run concurrently with each

7    other.

8           Upon your release, you're placed on supervised

9    release for a period of 8 years.  Specific conditions of

10   supervised release are that you're not to possess controlled

11   substances, you not possess firearms, you not violate any

12   state, federal or local laws.

13          I'm not going to impose a fine, no useful purpose

14   would be served by that.  I'm going to direct that you pay the

15   special assessments of $200, and that you stand committed

16   until that sentence is complied with.

17          With regard to the sentence of incarceration, I'm

18   going to strongly recommend that the Bureau of Prisons

19   evaluate Mr. Ortiz both for mental health problems, and for

20   drug problems, and that he receive whatever treatment is

21   recommended as a result of those evaluations.

22          Mr. Ortiz, do you understand the sentence that I've

23   just imposed?

24          THE DEFENDANT:  I don't know how much it was.

25          THE COURT:  The sentence was 132 months, or 11

1    years.  Do you understand?

2                THE DEFENDANT:  Um-hum (in English).

3                THE COURT:  Mr. Ortiz, you do have a right to

4    appeal.  I believe your appeal rights are limited by your plea

5    agreement.  Nevertheless, I'm obligated to tell you that if

6    you want to file an appeal it has to be done within 14 days.

7    We'll give you counsel to file that appeal free of charge.  Do

8    you understand that?

9                THE DEFENDANT:  Yes.

10               THE COURT:  Ms. Lin, you are representing him.  You

11   will protect his interest during the appeal period?

12               MS. LIN:  Yes, Your Honor.

13               THE COURT:  Anything further?

14               MS. FISK:  No, sir.

15               MS. LIN:  No, Your Honor.  Thank you.

16               MS. FISK:  Actually, Your Honor, I don't know

17   whether the defense has a request that he be placed near any

18   particular place with regard to prisons.

19               MS. LIN:  Your Honor the only family he really has

20   is in Puerto Rico.  I don't know if there's anything the

21   Bureau of Prisons can do about that.  I'm pretty sure there's

22   no facility in Puerto Rico.  But if it's possible to put in

23   there that his only family lives there.

24               THE COURT:  I would -- I will certainly recommend

25   that he be placed in an institution as close to his home in

1    Puerto as possible.

2              MS. LIN:  Thank you, Your Honor.

3              THE COURT:  All right.  Recess.

4              MS. FISK:  Thank you, Your Honor.

5         (Proceedings concluded at 10:33 a.m.)

6                 C E R T I F I C A T I O N

7    I, Josette Jones, court approved transcriber, certify that the

8    foregoing is a correct transcript from the official digital

9    audio recording of the proceedings in the above-entitled

10   matter.

11

12   --------------------------------         -----------------

13   JOSETTE JONES                            DATE

14   DIANA DOMAN TRANSCRIBING